UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Joe Brown,

                    Petitioner,

    vs.

Ricardo Rios, Harley Lappin,
and Allen Mukasey,

                    Respondents.                    Civ. No. 08-5752 (JRT/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Petition of Joe Brown for a Writ of Habeas Corpus, under Title 28 U.S.C. §2241. The Petitioner appears pro se, and the Respondents appear by Chad A. Blumenfield, Assistant United States Attorney.

For reasons which follow, we recommend that the Petition for a Writ of Habeas Corpus be dismissed.

## II. Factual and Procedural Background

The Petitioner was convicted of a Conspiracy to Distribute, and to Possess with Intent to Distribute, Cocaine and Cocaine Base, by the United States District Court for the Southern District of Iowa. See, Declaration of Ann Norenberg, ("Norenberg Decl."), Docket No. 4, ¶3. On May 25, 1999, the Petitioner was sentenced to 200 months in prison, followed by four (4) years of Supervised Release. Id. He is presently serving out that sentence at the Federal Correctional Institution, in Waseca, Minnesota ("FCI-Waseca"). See, Norenberg Decl., supra at ¶3, and Attachment A. The Bureau of Prisons (the "BOP") projects that the Petitioner, who was 66 years old when the Petition was filed, will be released from custody on June 16, 2013, with a Good Conduct Time release. See, Id. and Petition, supra at 3A.

By way of background, Title 18 U.S.C. §3621(b) governs the BOP's authority to designate an inmate's place of imprisonment. Section 3621(b) enumerates five (5) factors that the BOP, at a minimum, must consider in making its determination of an inmate's designation to a particular facility. Section 3621(b), provides as follows:

> (b)  Place of imprisonment. -- The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether

within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering --

(1)     the resources of the facility contemplated;

(2)     the nature and circumstances of the offense;

(3)     the history and characteristics of the prisoner;

(4)     any statement by the court that imposed the sentence--

    (A)     concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

    (B)     recommending a type of penal or correctional facility as appropriate; and

(5)     any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

Title 18 U.S.C. §3621(b).

The Court of Appeals for the Eighth Circuit has explained that Title 18 U.S.C. §3621(b) gives the BOP "'broad discretion to choose the location of an inmate's imprisonment,' so long as the factors enumerated in the statute are considered." Fegans v. United States, 506 F.3d 1101, 1103 (8th Cir. 2007), quoting Fults v. Sanders, 442 F.3d 1088, 1090-91 (8th Cir. 2006).  Residential Reentry Centers ("RRC"), or

halfway houses, are considered a place of confinement for purposes of Section 3621(b).  See, <u>Miller v. Whitehead</u>, 527 F.3d 752, 755 n. 3 (8th Cir. 2008).

The Second Chance Act of 2007, Public Law No. 110-199, 122 Stat. 657 (2008)( the "Second Chance Act"), was signed into law on April 9, 2008.  The purpose of the Statute, as pertinent here, is as follows:

> (5)    to assist offenders reentering the community from incarceration to establish a self-sustaining and law-abiding life **by providing sufficient transitional services for as short of a period as practicable, not to exceed one year,** unless a longer period is specifically determined to be necessary by a medical or other appropriate treatment professional; and

> (6)    to provide offenders in prisons, jails or juvenile facilities with educational, literacy, vocational, and job placement **services to facilitate re-entry into the community.**

Public Law No. 110-199, §3, 122 Stat. 657, 658 [emphasis added].

Among its many provisions, the Second Chance Act modified the BOP's authority, pursuant to Title 18 U.S.C. §3624(c), for designating prisoners who are nearing the end of their term of imprisonment to RRCs.

As amended, Section 3624(c)(1) provides as follows:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of

imprisonment spends a portion of the final months of that term **(not to exceed 12 months),** under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

[emphasis added].[1]

In accordance with the Second Chance Act, which increased the allowable RRC designation, which is to be made under Section 3624(c), from six (6) months to twelve (12) months, the BOP staff are currently evaluating inmates for RRC placement approximately 17-19 months in advance of their projected release date. See, Norenberg Decl., ¶4; see also, Miller v. Whitehead, supra at 756. Accordingly, as the Petitioner's projected release date is June 16, 2013, the BOP has not reviewed his case

---

[1]Prior to amendment, Title 18 U.S.C. §3624(c) provided as follows:

The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part**, not to exceed six months, of the last 10 per centum of the term** to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

for RRC placement, and any such evaluation will not occur until some time between November of 2011, and January of 2012.

In connection with those amendments, the Second Chance Act directed the BOP to issue new Regulations which should be designed to ensure that RRC placements, under Section 3624(c)(1), are "(A) conducted in a manner consistent with Section 3621(b) of this title; (B) **determined on an individual basis**; and (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community." Title 18 U.S.C. §3624(c)(6) [emphasis added].  Such Regulations were to be promulgated "not later than 90 days after the date of the enactment of the Second Chance Act of 2007."  Id.  Therefore, that time frame required the BOP to issue Regulations by no later than July 8, 2008.  See, 73 F.R. 62440-01 at *62442.

However, because the rule-making process generally takes longer than 90 days, the BOP issued guidance to its staff on April 14, 2008, in order to implement the provisions of the Second Chance Act.  See, Norenberg Decl., supra at ¶6; see also, Miller v. Whitehead, supra; Stanko v. Rios, 2009 WL 1303969 at *3-4 (D. Minn., May 8, 2009).  On October 21, 2008, interim Regulations were published in the Federal Register, and those Regulations have been posted for the BOP's inmate

population.  See, <u>Norenberg Decl.</u>, supra at ¶6 and 28 C.F.R. Part 570, 73 F.R. 62440-01 (Interim Rule with request for comments).

In addition to the changes to Section 3624(c), the Second Chance Act enacted Title 42 U.S.C. §17541, which provides for the establishment of a Federal Prisoner Reentry Initiative.  See, <u>Pub.L. No. 110-199, §231, 122 Stat. 657, 683-685</u>.   The Statute provides as follows:

> (a)  The Attorney General, in coordination with the Director of the Bureau of Prisons, shall, subject to availability of appropriations, conduct the following activities to establish a federal prisoner reentry initiative:
>
> \*      \*      \*
>
> (2)  Incentives for a prisoner who participates in reentry and skills development programs **which may, at the discretion of the Director include** --
>
> > (A)  the maximum allowable period in a community confinement facility;

<u>Title 42 U.S.C. §17541(a)(2)(A)</u> [emphasis added].

The Second Chance Act further directed the Attorney General to "conduct a pilot program to determine the effectiveness of removing eligible elderly offenders from a Bureau of Prisons facility and placing such offenders on home detention until the

expiration of the prison term to which the offender was sentenced." <u>Title 42 U.S.C.</u>

<u>§17541(g)</u> (the "Pilot Program"). In relevant part, the Statute provides as follows:

(5)  In this section:

(A)  * * * the term "eligible elderly offender' means an offender in the custody of the Bureau of Prisons –

(I)  who is not less than 65 years of age;

(ii)  who is serving a term of imprisonment that is not life imprisonment based on conviction for an offense or offenses that do not include any crime of violence, offense described in section 2332b(g)(5)(B) of Title 18, or offense under chapter 37 of Title 18, **and has served the greater of 10 years or 75 percent of the term of imprisonment** to which the offender was sentenced;

(iii)  who has not been convicted in the past of any Federal or State crime of violence, sex offense, or other offense described in clause (ii);

(iv)  who has not been determined by the Bureau of Prisons, on the basis of information the Bureau uses to make custody classifications, and in the sole discretion of the Bureau, to have a history of violence, or of engaging in conduct constituting a sex offense or other offense described in clause (ii);

<blockquote>
(v) who has not escaped, or attempted to escape, from a Bureau of Prisons institution;

(vi) with respect to whom the Bureau of Prisons has determined that release to home detention under this section will result in a substantial net reduction of costs to the Federal Government; and

(vii) who has been determined by the Bureau of Prisons to be at no substantial risk of engaging in criminal conduct or of endangering any person or the public if released to home detention.
</blockquote>

Title 42 U.S.C. §17541(g)(5).[2]

The Pilot Program must be conducted "through at least one Bureau of Prisons facility **designated by the Attorney General as appropriate** for the pilot program and shall be carried out during fiscal years 2009 and 2010." Title 42 U.S.C. §17541(g)(3) (outlining the "[s]cope of the pilot program")[emphasis added].

On October 16, 2008, the Petitioner filed this Petition, under Title 28 U.S.C. §2241, in which he seeks a Writ of Habeas Corpus. See, Petition, supra. The Petitioner is not presently challenging the validity of his conviction or sentence, for

---

[2]Title 18 U.S.C. 2332b(g)(5)(B) describes offenses that would constitute a "Federal crime of terrorism." Chapter 37 of Title 18 relates to crimes of Espionage.

which he is currently incarcerated.  Id. at p. 3.  Instead, the Petitioner raises various

challenges that are predicated on the quoted provisions of the Second Chance Act.

The Petitioner first claims that the Pilot Program, which was established by the

Second Chance Act, "is a prohibited Bill of Attainder that dovetails with the Due

Process clause of the 5th and 14th Amendments, and the historic civil rights act 'equal

protection under the law.'"  Petition, supra at p. 3.  Specifically, the Petitioner

contends that the Pilot Program, which is established by Title 42 U.S.C. 17541(g),

violates his rights in that it allows the Attorney General "to choose one prisoner over

another prisoner, * * * and reduces their sentences by 25%, and not the Petitioner's

sentence."  Id.

In addition, the Petitioner asserts that the Respondents have violated his rights

"by failing to promulgate regulations, pursuant to 18 USC § 3624(c)(6), and 'shall'

pursuant to the mandatory language in 18 USC § 3624(c)(1) allow the Petitioner to

spend 'the maximum period in a community facility [42 USC §17541(a)(2)(A)] not

to exceed 12 months."  Id. [brackets in original].

The Respondents advance several grounds in opposition to the Petition.[3]  First,

---

[3]As pointed out by the Respondents, the only proper Respondent in this matter
is the Petitioner's custodian, i.e., Ricardo Rios, who is the Warden of FCI-Waseca.
(continued...)

the Respondents argue that the Petitioner lacks standing to challenge the Pilot Program, because a declaration that the Act is unconstitutional would have no bearing on the fact or duration of his custody. See, <u>Government's Response</u>, <u>Docket No. 3</u>, pp. 7-8. The Respondents also assert that the Petitioner's claim, as it pertains to the Pilot Program, is not ripe for review. <u>Id.</u> at p. 8. The Respondents further contend that the Petitioner has failed to exhaust his administrative remedies and, in any event, that the Petitioner's claims are without merit. <u>Id.</u> at pp. 9-15. Given our conclusion, that the Petitioner is not entitled to Habeas relief, we benignly overlook, as a matter of discretion, the Petitioner's failure to exhaust his administrative remedies, and we proceed to the merits of his claim. See, <u>Lueth v. Beach</u>, 498 F.3d 795, 797 n. 3 (8th Cir. 2007)(recognizing that Court's jurisdiction to address a Section 2241 Petition is unaffected by a claimed failure to exhaust administrative remedies, as that is a judicially created, and not a jurisdictional defense to the Habeas claim), cert. denied, --- U.S. ---, 128 S.Ct. 927 (2008).

---

[3](...continued)
See, <u>Title 28 U.S.C. §§2242, 2243</u>; <u>Rumsfeld v. Padilla</u>, 542 U.S. 426, 435-36 (2004); <u>Braden v. 30th Judicial Circuit Court of Kentucky</u>, 410 U.S. 484, 495-96 (1973); <u>United States v. Chappel</u>, 208 F.3d 1069, 1069-70 (8th Cir. 2000). However, given our recommendation, we need not address that defect further.

## III.  Discussion

A.  <u>The Petitioner's Claim Concerning the BOP Regulations</u>.

The Petitioner contends that his statutory rights were violated by the BOP's failure to promulgate Regulations to implement the newly enacted provisions of Section 3624(c).  See, <u>Petition</u>, supra at p. 3. As noted, the Respondents maintain that the Petitioner lacks standing to challenge the BOP's failure to promulgate Rules in a timely fashion, and additionally, that his claim is without merit.  See, <u>Respondent's Memorandum</u>, supra at p. 11.  We agree.

Article III of the United States Constitution restricts Federal Courts to the adjudication of actual "cases" and "controversies."  The principle of "standing" is among several doctrines -- such as mootness, ripeness, and the involvement of a political question -- which have developed to inform and define the "case or controversy" requirement.  See, <u>Allen v. Wright</u>, 468 U.S. 737, 750 (1984); <u>Warth v. Seldin</u>, 422 U.S. 490, 498 (1975); <u>Ben Oehrleins and Sons and Daughter, Inc. v. Hennepin County</u>, 115 F.3d 1372, 1378 (8th Cir. 1997), cert. denied, 522 U.S. 1029(1997)("Standing is the constitutional requirement, imposed by the 'cases or controversies' provision of Article III, that a plaintiff must allege a judicially cognizable and redressable injury in order to pursue a lawsuit."); <u>Neighborhood</u>

Transp. Network, Inc. v. Pena, 42 F.3d 1169, 1172 (8th Cir. 1994)("Federal courts are courts of limited jurisdiction and can only hear actual 'cases or controversies' as defined under Article III of the Constitution."). "As an aspect of justiciability, the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." Warth v. Seldin, supra at 498-99, quoting Baker v. Carr, 369 U.S. 186, 204 (1962).

Moreover, it is a plaintiff's duty to show the "minimal constitutional requirements" necessary for standing. See, Ben Oehrleins and Sons and Daughter, Inc. v. Hennepin County, supra at 1378. Those elements include:

> [A]n "injury in fact" that is both (a) concrete and particularized, and (b) actual or imminent, rather than conjectural or hypothetical; (2) a causal connection between the alleged injury and the defendant's conduct; that is, that the injury is "fairly traceable" to the challenged action; and (3) that it is likely that a favorable decision will redress the injury.

Id., citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-60 (1992).

Summed up, "[a] federal court's jurisdiction * * * can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from putatively illegal action[.]'" Warth v. Seldin, supra at 499, quoting Linda R.S. v. Richard D., 410 U.S. 614, 617 (1973).

-13-

Here, we conclude that the Petitioner does not have standing to challenge the BOP's failure to promulgate timely Regulations. We recognize that the BOP did not technically comply with its duty to promulgate Regulations by July 8, 2008, but, on the Record before us, we are unable to identify any concrete injury to the Petitioner that would be redressable by a Writ of Habeas Corpus. The BOP has since promulgated Regulations, and the Petitioner's circumstance will not be reviewed for RRC placement for some time. By all indications in the Record, the Petitioner will be evaluated for placement in a RRC, consistent with the provisions of the Second Chance Act, approximately 17-19 months before his projected release date and, at such time, he will have the benefit of the newly promulgated Regulations.

Therefore, the Petitioner has not, and may not ever, suffer any concrete, particularized injury that arises from the BOP's asserted failure to timely promulgate Regulations. We conclude that any injury that the Petitioner has suffered, on account of the untimeliness of the Regulations, is merely metaphysical, and accordingly, we are without the means to redress it. See, Stanko v. Rios, supra at *8 ("[The Petitioner] does not establish any concrete injury [resulting from the untimely Regulations pursuant to the Second Chance Act], since the old regulations plainly will not be applied to him" and, "[u]nder these circumstances, [the Petitioner] has no

standing to pursue habeas relief."). The Petitioner has failed to make any showing as to how the lateness of the Regulations has had any effect upon his confinement. Accordingly, we are without authority to offer relief as to that portion of his Habeas Petition.

Moreover, to the extent that the Petition can be construed to request, as relief, that this Court order the BOP to review the Petitioner for RRC placement immediately, that claim is entirely without merit. As noted, the BOP has advised that it will review the Petitioner for RRC placement some time in the latter part of 2010, or early 2011. The Petitioner has not explained why that would violate his rights, nor are we aware of any authority that invalidates the BOP's policy in this respect. Conducting RRC reviews 17-19 months prior to an inmate's projected release date does not violate any of the provisions of the Second Chance Act, and allows ample time in the event that the BOP places an inmate in an RRC for the maximum twelve (12) months.

We find no reason to invalidate the BOP's decision to conduct the Petitioner's RRC review 17-19 months prior to his projected release date. Moreover, it is well-established that inmates are not "entitled to a full-blown analysis of a request to transfer, involving individualized consideration of all five factors in §3621(b),

whenever the inmate chooses to make such a request * * * [since that] would require the BOP to consider daily requests for transfer to an RRC from every inmate in a facility." Miller v. Whitehead, supra at 757, citing Fults v. Sanders, supra, and Muniz v. Sabol, 517 F.3d 29, 36 n.14 (1st Cir. 2008), cert. denied, --- U.S. ---, 129 S.Ct. 115 (2008); see also, Wells v. Federal Bureau of Prisons, 2007 WL 313830 at *1(D. Minn., January 31, 2007); Fisher v. Morrison, 2006 WL 1716135 at *1-2 (D. Minn., June 20, 2006), aff'd, 258 Fed.Appx. 73 (8th Cir. 2007)(noting that the Court is aware of no authority requiring "that the BOP conduct its final halfway house eligibility review * * * on demand by the prisoner."), citing Elwood v. Jeter, 386 F.3d 842, 847 (8th Cir. 2004); McFadden v. Morrison, 2006 WL 2583417 at *3 (D. Minn., September 6, 2006); Carter v. Morrison, 2006 WL 1791275 at *1 (D. Minn., June 27, 2006).

We further emphasize that "[t]he BOP is uniquely qualified, in the first instance, to make decisions as to the propriety, as well as the timing, of RRC placement determinations." O'Hara v. Rios, 2009 WL 3164724 at *7 (D. Minn., September 28, 2009), citing Hosna v. Groose, 80 F.3d 298, 303 (8th Cir. 1996), cert. denied, 519 U.S. 860 (1996). The Petitioner has pointed to no rationale as to why this Court should interfere with the BOP's discretion as to the timing of RRC evaluations

under Section 3624(c).  Accordingly, we recommend that that aspect of the Petitioner's Habeas request be denied.

B.  The Petitioner's Request for a Twelve-Month RRC Placement.

We also understand the Petitioner to be requesting an Order that directs that he be provided the maximum RRC placement allowed, pursuant to Section 3624(c), and Section 17541(a)(2)(A).  See, Petition, supra at p. 3.  The Respondents urge that the Petitioner is not entitled, under Section 3624(c), to any particular amount of time in a RRC.  See, Respondent's Memorandum, supra at p. 13.  We first address the Petitioner's claim, as it relates to Section 17541(a)(2)(A).

"The writ of habeas corpus shall not extend to a prisoner unless * * * [h]e is in custody in violation of the Constitution or law or treaties of the United States."  Title 28 U.S.C. §2241(c).  "The writ of habeas corpus functions to grant relief from unlawful custody or imprisonment."  Campillo v. Sullivan, 853 F.2d 593, 595 (8th Cir. 1988), cert. denied, 490 U.S. 1082 (1989); see also, Archuleta v. Hedrick, 365 F.3d 644,  647 (8th Cir. 2004).  Here, however, the Petitioner has not raised a claim that would entitle him to relief, since he has failed to show that the BOP's determination, as to the length of his custody, is in violation of any law.

Initially, we note that the Respondents have not addressed the Petitioner's claim, as it specifically relates to the incentive program to be implemented pursuant to Section 17541(a).  Furthermore, the Record does not indicate, nor is it clear to the Court, whether the BOP has yet established a prisoner reentry incentive program that would provide for the "maximum allowable period in a community facility."  Title 42 U.S.C. §17541(a)(2)(A); see also, Holland v. Federal Bureau of Prisons, 2009 WL 2872835 at *7 (D. S.C., September 2, 2009)(recognizing that no Regulations had yet been promulgated); but see, Krueger v. Martinez, --- F. Supp.2d ---, 2009 WL 2876861 at *6-7(M.D. Pa., September 3, 2009)(finding that it was unclear whether the BOP had implemented an incentive program).   Notably, the Statute does not **require** that the BOP make maximum RRC placement an incentive for participating in a reentry program.  See, Holland v. Federal Bureau of Prisons, supra at *7 (holding that the petitioner is not entitled to be placed in a RRC for the maximum allowable time even if he were to complete a reentry program, because "the Act itself makes clear any incentive, such as the placement in a community confinement facility for the maximum allowable period, * * * is within the discretion of the director of BOP.").

Rather, the Statute merely authorizes the BOP to make maximum RRC placement an

incentive, in its own discretion.[4]

Regardless of whether any such program exists, nothing in the Record discloses

that the Petitioner  has participated in a reentry program that would make him eligible

for the incentive, were the BOP to make maximum RRC placement an incentive for

participation in such programs.  Accordingly, on the Record before us, we find no

basis for concluding that the Petitioner is entitled, under Section 17541(a)(2)(A), to

a twelve (12) month RRC placement at this time.

Furthermore, to the extent that the Petitioner contends that he is entitled to a

twelve (12) month placement under Section 3624(c),"it is clear beyond dispute that

---

[4]Of the few cases that address Title 42 U.S.C. §17541(a), we recognize that at least one (1) case granted Habeas relief under that Section. See, <u>Krueger v. Martinez</u>, --- F. Supp.2d ---, 2009 WL 2876861 at *6-7 (M.D. Pa., September 3, 2009).  There, the BOP acknowledged that it had not considered Section 17541(a) when making the petitioner's final RRC review.  <u>Id.</u>  While the Court recognized that the BOP was not required to make maximum RRC placement an incentive, it concluded that the Statute does require that the BOP establish some sort of incentive program.  <u>Id.</u> at 7.  Since the Court found that the BOP had not shown that any program had been established, the Court concluded that it was appropriate to reevaluate the petitioner for a twelve (12) month RRC placement under Section 17541(a)(2)(A).  <u>Id.</u> Unlike the circumstances in <u>Krueger</u>, however, the Petitioner, here, has not shown that he has, or will, complete any program that would entitle him to be considered for an incentive under Section 17541(a)(2)(A).  Accordingly, we find <u>Krueger</u> inapposite under the facts presented here.

[the Petitioner] does not have an enforceable legal right to a twelve-month placement in an RRC." O'Hara v. Rios, supra at * 2, citing Elwood v. Jeter, supra at 847, and Morrow v. Rios, 2009 WL 924525 at *2 (D. Minn., March 31, 2009). Rather, all that the Petitioner is entitled to, under that Section, is an **individualized** evaluation of the appropriate RRC placement for his reentry, in light of the specific factors outlined in Title 18 U.S.C. §3621(b). See, Fisher v. Morrison, supra at *2; O'Hara v. Rios, supra at *2; Skrzypek v. Cruz, 2009 WL 465053 at *2 (D. Minn., February 24, 2009). As previously noted, he is not yet entitled to an individualized review, nor is he entitled to a declaration from this Court that he be given the maximum RRC placement.

Accordingly, because the Petitioner has not identified any legal basis that would entitle him to an RRC placement of twelve (12) months, we recommend that his claim for that relief be denied.

C.    The Petitioner's Challenge to the Pilot Program.

In his remaining claim, the Petitioner contends that the Pilot Program, which is aimed at non-violent elderly offenders, is unconstitutional for three reasons: 1) it is a Bill of Attainder; 2) it violates Equal Protection; and 3) it violates Due Process. See, Petition, supra at p. 3. He claims that he is "being continually punished, while the Attorney General arbitrarily and capriciously chooses one prison or prisoner

over another, and reduces their sentence by 25%, but does not reduce [his] sentence in the same manner." Petition, supra at 3B.  The Respondents argue that the Court is without jurisdiction to address his constitutional challenges to the Pilot Program.[5]  We agree.

Federal Habeas provides a remedy only for prisoners challenging the fact or duration of their custody, rather than the conditions of their confinement.  See, Kruger v. Erickson, 77 F.3d 1071, 1073 (8th Cir. 1996)("If the prisoner is not challenging the validity of his conviction or the length of his detention * * * then a writ of habeas corpus is not the proper remedy."); see also, Otey v. Hopkins, 5 F.3d 1125, 1130 (8th Cir. 1993), cert. denied, 512 U.S. 1246 (1994)("The central focus of the writ of habeas corpus is to provide a remedy for prisoners who are challenging the fact or duration of their physical confinement and are seeking immediate release or a speedier release."); Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991)("Habeas corpus

---

[5]The Respondents suggest that the Petitioner's challenge to the Pilot Program is not ripe for review, since it is not set to be implemented until fiscal year 2009, and 2010, according to the Statute.  See, Government's Response, supra at p. 8.  However, the Respondents provide no details as to when the program will actually be implemented, beyond reciting the time frame provided in the Statute.  Given the lack of information, in the Record before us, concerning the implementation of the Pilot Program, as well as the fact that the Petitioner has not presented a claim that is cognizable in a Habeas Petition, we decline to make our recommendation on that basis.

proceedings are the proper mechanism for a prisoner to challenge the 'legality or duration' of confinement * * *[;] [a] civil rights action, in contrast, is the proper method of challenging 'conditions of * * * confinement.'")[internal citation omitted].

Here, we find that the Petitioner may not pursue his claim, as it relates to the Pilot Program, in a Habeas Petition, because a favorable ruling would have no bearing on the fact or duration of the Petitioner's imprisonment. Rather, a finding that the Program is unlawful would lead to an invalidation of the Program. Accordingly, a favorable ruling would have no effect on the fact or duration of the Petitioner's confinement. See, Stanko v. Rios, supra at *6 (holding that a similar challenge to the Pilot Program would not warrant Habeas relief, because a finding that the Program was unconstitutional would lead to the end of that Program). Accordingly, because his challenge does not go to the fact or duration of his confinement, the Petitioner cannot obtain relief for that claim in a Habeas Petition.

Moreover, even if we reached the substance of his claims, we conclude that the result would be the same as his claims are wholly without merit.[6] As a result, in the interests of completeness, we address his constitutional claims, and we first consider

---

[6]Two recent cases in this District have considered, and rejected, similar arguments. See, Stanko v. Rios, 2009 WL 1303969 (D. Minn., May 8, 2009) and O'Hara v. Rios, 2009 WL 3164724 at *7-9 (D. Minn., September 28, 2009).

the Petitioner's assertion that the Pilot Program is a "prohibited Bill of Attainder." <u>Petition</u>, supra at p. 3.

    1.    <u>The Petitioner's Bill of Attainder Claim</u>.

    The Bill of Attainder clause states that "[n]o Bill of Attainder or ex post facto law shall be passed." <u>United States Constitution, Art. I, §9, cl. 3</u>.[7] The clause is part of Article I of the Constitution, which establishes, and limits, the authority of the Legislative Branch of the Federal Government.

Indeed, a Bill of Attainder is, by definition, "a bill" -- in other words, a **legislative** instrument. "Bills of attainder are 'legislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial.'" <u>Risenhoover v. Washington County Community Services</u>, 545 F. Supp.2d 885, 891 (D. Minn. 2008), quoting <u>Citizens for Equal Protection v. Bruning</u>, 455 F.3d 859, 869 (8th Cir. 2006), quoting, in turn, <u>United States v. Lovett</u>, 328 U.S. 303, 315 (1946); see also, <u>Black's Law Dictionary</u> (8th ed. 2004)(defining a Bill of Attainder as "[a] special **legislative act** prescribing punishment, without a trial, for a specific person or

---

[7]The Constitution also refers to Bills of Attainder in Article I, Section 10, clause 1, but that clause is inapposite here, because it applies to the States, and not to the Federal Government.

group.")[emphasis added].   In addition, the United States Supreme Court has described a Bill of Attainder as "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." Nixon v. Administrator of General Services, 433 U.S. 425, 468 (1977).

Here, the Bill of Attainder clause is inapposite, because the legislative act that establishes the Program does not direct punishment at the Petitioner, or at any other ascertainable group of prisoners.  We recognize that the Pilot Program does "result in a potential benefit for some elderly prisoners who are eligible for the program, but this does not amount to punishment of other prisoners." O'Hara v. Rios, supra at *7 n. 2. While the Petitioner may believe that he is being punished for not being selected to participate in the Program, that belief does not convert the Pilot Program into a Bill of Attainder.  Since we find that the Second Chance Act, in establishing the Pilot Program, has not imposed any punishment, we conclude that it is not a Bill of Attainder, and that the Petitioner's claim, in this respect, is without merit.

2.      The Petitioner's Equal Protection Claim.

Simply put, the Equal Protection Clause mandates that all persons, who are similarly situated, should be treated alike.[8] See, City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985); More v. Farrier, 984 F.2d 269 (8th Cir. 1993), cert. denied, 510 U.S. 819 (1993). The guarantee of equal protection is not a source of substantive rights or liberties, but rather, is a right to be free from invidious discrimination in statutory classifications, and other Government entitlements. See, Harris v. McRae, 448 U.S. 297, 322 (1980), reh'g denied, 448 U.S. 917 (1980). An action, which claims a violation of this right, must show, on its face, that some element of intentional or purposeful discrimination accompanied the unequal treatment. See, Snowden v. Hughes, 321 U.S. 1, 8 (1944).

The discriminatory purpose, which is essential to an equal protection claim, implies more than intent or volition, for it implies that the violator selected, or

_____

[8]"The Supreme Court has held that where the federal government makes a classification which, if made by a state, would violate the Equal Protection Clause of the Fourteenth Amendment, then the classification violates the Due Process Clause fo the Fifth Amendment." Minnesota ex rel. Hatch v. United States, 102 F. Supp.2d 1115, 1123 n. 5 (D. Minn. 2000), aff'd, 273 F.3d 805 (8th Cir. 2001), cert. denied, 536 U.S. 939 (2002), citing Bolling v. Sharpe, 347 U.S. 497, 499-500 (1954). Since, here, we deal with Federal legislation, we apply the equal protection attributes of the Fifth Amendment's Due Process Clause, which are the Federal analog of the Fourteenth Amendment's Equal Protection Clause, and our analysis of such claims is the same. See, Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 215-18 (1995).

reaffirmed, a particular course of action, at least in part, because of -- not merely in spite of -- its adverse effects upon an identifiable group. See, <u>McCleskey v. Kemp</u>, 481 U.S. 279, 298 (1987). In <u>Divers v. Department of Corrections</u>, 921 F.2d 191, 193 (8th Cir. 1990), our Court of Appeals held that principles of equal protection might be violated if a prisoner received treatment, that was "invidiously dissimilar" to that received by other, similarly situated inmates. See also, <u>Wishon v. Gammon</u>, 978 F.2d 446, 450 (8th Cir. 1992); <u>Flittie v. Solem</u>, 827 F.2d 276, 281 (8th Cir. 1987).

Here, the Petitioner "does not allege he [is] a member of a protected class or that a fundamental right was violated, [so] he must show that "similarly situated classes of inmates are treated differently, and that this difference in treatment bears no rational relation to any legitimate penal interest." See, <u>Phillips v. Norris</u>, 320 F.3d 844, 848 (8th Cir. 2003), quoting <u>Weiler v. Purkett</u>, 137 F.3d 1047, 1051 (8th Cir.1998); see also, <u>Turner v. Safley</u>, 482 U.S. 78, 84 (1987)(noting that any apparent infringement of the Petitioner's equal protection rights, which is brought about by means of prison Regulations or policies, must be judged by a deferential standard, i.e., whether the policies are reasonably related to legitimate penological interests).

On the Record before us, we conclude that the classification involved in the

elderly offender program does not offend the Equal Protection Clause. A Court in this

District has aptly described the basis for this program, as follows:

> The legislative findings, for example, establish that expenditures on incarceration in this country skyrocketed from $9 million in 1982 to $59.6 million in 2002, and by 2002, there were over 7,000,000 people incarcerated in federal or state prisons or in local jails. 42 U.S.C. §17501(b). A monitored pilot program in federal prison to place elderly non-violent offenders in home detention at the end of their sentences is aimed at, and rationally related to, the governmental objective of relieving prison overcrowding, reducing the cost of incarceration, and achieving a reintegration of prisoners into the community. The use of a test program on a limited number of prisoners to measure the feasibility of achieving these legitimate objectives is a reasonable means of proceeding.

O'Hara v. Rios, supra at *8.

We agree with that description of the Program, and conclude that any classifications, which are involved in the Pilot Program, are reasonably related to legitimate penological objectives. The same conclusion has been previously drawn by Courts in this District, and we find their logic compelling. See, e.g., O'Hara v. Rios, supra at *2 n. 7, and *8; Stanko v. Rios, supra at *6-7. We find nothing invidious about requiring the Petitioner to serve the remainder of his sentence while conducting a limited Pilot Program. As such, we find that the Petitioner's claim on Equal Protection grounds is legally unsound.

3.      The Petitioner's Due Process Claim.

The Petitioner also refers to the Due Process Clause in connection with his challenge to the pilot program.  See, Petition, supra at p. 3.  The Fifth Amendment prohibits the Federal Government from depriving a person of life, liberty, or property, without due process of law.  While it is true that the constitutional protections encompassed by the Due Process Clause do not abate at the time of imprisonment, see, Hudson v. Palmer, 468 U.S. 517, 539 (1984)(O'Connor, J., concurring), it is also true that "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."  Sandin v. Conner, 515 U.S. 472, 485 (1995), quoting Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 125 (1977), quoting, in turn, Price v. Johnston, 334 U.S. 266, 285 (1948).

In order to prove a violation of his due process rights, the Petitioner "must identify a liberty interest that is protected by the Due Process Clause of the United States Constitution."  Green v. Bureau of Prisons, 2002 WL 32619483 at *3 (D. Minn., January 29, 2002), citing Wolff v. McDonnell, 418 U.S. 539, 557 (1974).  In order to be considered a liberty interest, the applicable law "must have created a mandatory scheme which necessarily affects the duration of a prisoner's sentence."

Moorman v. Thalaker, 83 F.3d 970, 973 (8th Cir. 1996), citing Wolff v. McDonnell, supra, and Sandin v. Conner, supra.  In Sandin v. Conner, supra at 483, the Supreme Court held that, in determining whether a prisoner's due process rights were infringed, a Court should determine whether the challenged restraint imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

Here, we conclude that the Petitioner does not have a constitutionally protected liberty interest in participating in the Pilot Program.  Notably, the Program is to be implemented with respect to those prisoners, and in those prisons, that the BOP selects, in its sole discretion.  While the Statute does mandate the creation of the Program, that does not translate into a mandate that would necessarily implicate the duration of the Petitioner's sentence.  There is simply nothing in the Statute that would require the BOP to consider every inmate who might meet the eligibility standards.  Moreover, we are aware of no authority which holds that a prisoner has a constitutionally protected right to home confinement, or early release, nor is there any support for the contention that Section 17451(g)(1)(A) creates one.  See, Bey v. Zoley, 2009 WL 350596 at *1 (D. D.C., February 12, 2009)(rejecting the notion that the plaintiff "has an entitlement to release to a [RRC] or home confinement * * * [that would be] constitutionally protected by the due process clause), paraphrasing Pugliese

v. Nelson, 617 F.2d 916, 923 (2d. Cir. 1980), citing, in turn, Greenholtz v. Inmates of the Nebraska Penal and Corr. Complex, 442 U.S. 1 (1979); see also, Mahfouz v. Lockhart, 826 F.2d 791, 792 - 794 (8th Cir. 1987)(rejecting claim that prisoner had constitutionally protected liberty interest in work release under State Statute that contained substantive criteria for **eligibility**, but still gave State Officials broad discretion in **"selecting eligible inmates to participate in the program"**) [emphasis added]; United States v. Moore, 2009 WL 2970464 at *2 (M.D. Ala., September 11, 2009)(noting that selection of facilities and inmates for the Pilot Program is within the broad discretion afforded to the Attorney General under Section 17541(g)); Holland v. Federal Bureau of Prisons, 2009 WL 2872835 (D. S.C., September 2, 2009)(finding that BOP's failure to consider petitioner for early release did not violate Due Process Clause); Parker v. Corrothers, 750 F.2d 653, 657 n. 5 (8th Cir. 1984).

There is simply no basis for concluding that the Petitioner is entitled to participate in the Pilot Program, or that he has a right to be reviewed, on demand, for that Program. The Statute affords the BOP broad discretion in the implementation and scope of the Program and, as such, the BOP's failure to place the Petitioner in the Pilot Program does not implicate Due Process, nor could we conclude that not allowing the Petitioner to be placed on home confinement, pursuant to the Pilot

Program, is an "atypical and significant hardship." <u>Sandin v. Connor</u>, supra. Therefore, we find that the Petitioner's argument, that the Pilot Program violates the Due Process Clause, is wholly without merit.

In sum, we find that the Petitioner is not entitled to Habeas relief on any of the claims raised in his Petition, and accordingly, we recommend that the Petitioner's Habeas Petition be dismissed.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Petition for a Writ of Habeas Corpus [Docket No. 1] be dismissed, with prejudice.

Dated: November 2, 2009                    *s/Raymond L. Erickson*
                                           Raymond L. Erickson
                                           CHIEF U.S. MAGISTRATE JUDGE

N O T I C E

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than November 20, 2009**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to

comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than November 20, 2009**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.